# UNITED STATES DISTRICT COURT

for the

Middle District of Tennessee

Nashville Division

| | | |
|---|---|---|
| **JOHN REMBOLD** | ) | Case No. 3:25-cv-01031 |
| | ) | *(to be filled in by the Clerk's Office)* |
| | ) | |
| *Plaintiff(s)* | ) | |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | Jury Trial: *(check one)* ☑Yes ☐No |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| -v- | ) | |
| | ) | |
| | ) | |
| **HCA MANAGEMENT SERVICES, L.P.;** | ) | |
| **HCA HEALTHCARE, INC.** | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued. If the* | ) | |
| *names of all the defendants cannot fit in the space above, please* | ) | |
| *write "see attached" in the space and attach an additional page* | | |
| *with the full list of names.)* | | |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

I.    **The Parties to This Complaint**

A.    **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | JOHN REMBOLD |
| Street Address | 8412 WHITES CREEK PIKE |
| City and County | JOELTON, DAVIDSON |
| State and Zip Code | TENNESSEE, 37080 |
| Telephone Number | 218-409-9249 |
| E-mail Address | JOHNREMBOLD@GMAIL.COM |

B.    **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | HCA MANAGEMENT SERVICES, L.P. |
| Job or Title *(if known)* | DIRECT EMPLOYER, PER PAYSTUBS |
| Street Address | ONE PARK PLAZA |
| City and County | NASHVILLE, DAVIDSON |
| State and Zip Code | TENNESSEE, 37203 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | HCA HEALTHCARE, INC. |
| Job or Title *(if known)* | PARENT CORPORATION/EMPLOYER |
| Street Address | ONE PARK PLAZA |
| City and County | NASHVILLE, DAVIDSON |
| State and Zip Code | TENNESSEE, 37203 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

## C. Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | HCA HEALTHCARE BUILDING 4 |
| Street Address | 2555 PARK PLAZA |
| City and County | NASHVILLE, DAVIDSON |
| State and Zip Code | TENNESSEE, 37203 |
| Telephone Number | |

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☐      Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

     *(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐      Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

     *(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☑      Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

     *(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑      Other federal law *(specify the federal law)*:

     42 U.S.C. § 12203(a) - ADA Retaliation

☐      Relevant state law *(specify, if known)*:

☐      Relevant city or county law *(specify, if known)*:

## III.  Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.  The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☑ Termination of my employment.
- ☐ Failure to promote me.
- ☑ Failure to accommodate my disability.
- ☑ Unequal terms and conditions of my employment.
- ☑ Retaliation.
- ☑ Other acts *(specify)*:   Hostile work env; sham interactive process; forced reassignment w/o accommodation; constr. discharg

(Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)

B.  It is my best recollection that the alleged discriminatory acts occurred on date(s)

April 1, 2025 - July 2, 2025 (ongoing pattern of discrimination and retaliation)

C.  I believe that defendant(s) *(check one)*:

- ☐ is/are still committing these acts against me.
- ☑ is/are not still committing these acts against me.

D.  Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☐ race _____
- ☐ color _____
- ☐ gender/sex _____
- ☐ religion _____
- ☐ national origin _____
- ☐ age *(year of birth)* _____ *(only when asserting a claim of age discrimination.)*
- ☑ disability or perceived disability *(specify disability)*

Major Depressive Disorder (MDD) and Generalized Anxiety Disorder (GAD)

E.  The facts of my case are as follows.  Attach additional pages if needed.

## III. Statement of Claims

E. The facts of my case are as follows.

1. On March 3, 2025, I began employment with Defendants as a Technical Product Manager in the Automation Center of Excellence at an annual salary of $151,725.

2. On March 3, 2025, Defendants failed to provide basic onboarding materials or training.

3. Despite these failures, I proactively scheduled meetings with colleagues, independently sought access to necessary tools, and created process mapping documentation during March 2025.

4. Throughout March 2025, I received no negative feedback, performance concerns, or disciplinary actions from supervisors Sue Smith or Ramiro Duran.

5. On April 1, 2025, in my first substantive meeting with second-level manager Ramiro Duran, he asked "What do you think your job is?" and responded "Wrong!" when I provided my answer.

1

6. On April 1, 2025, Mr. Duran stated "We might have to reassign you" and "You need to treat these bots like your children."

7. Following the April 1, 2025 meeting, I began experiencing symptoms of Major Depressive Disorder and Generalized Anxiety Disorder, including depression, anxiety, feelings of incompetence, and cognitive processing difficulties.

8. On April 7, 2025, Mr. Duran stated "I'm not here to do your job. You just gave me a bunch of corporate buzzwords" and asked "Do you even want to be doing this work?"

9. On April 11, 2025, Mr. Duran praised my Support Ops Roadmap deliverable as "excellent" and "exactly what I'm looking for."

10. On April 21, 2025, Mr. Duran repeatedly called my comprehensive bot lifecycle management deliverable as "silly" and questioned my competence.

11. The continued hostile treatment throughout April 2025 worsened the mental health symptoms that began after the April 1 meeting, progressively impacting my ability to concentrate, sleep, and perform daily activities.

2

12. On April 23, 2025, I submitted my 45-day new hire survey providing feedback about inadequate onboarding training, conflicting management directives, and degrading communication from leadership.

13. On May 5, 2025, at 1:30 PM, I joined a scheduled WebEx meeting via the unique calendar URL.

14. On May 5, 2025, at 1:43 PM, Ms. Smith falsely stated "I sat in your personal room for 15 minutes" despite documented evidence showing she was not present.

15. On May 8, 2025, Ms. Smith asked me to update a presentation using her template and upon completion, confirmed my formatting was correct.

16. On May 8, 2025, after the presentation was shared with Mr. Duran, he and Ms. Smith claimed the formatting was "wrong". Ms. Smith then emailed an edited version of the template as proof. The document meta data showed that the template had been altered after she approved my work.

17. On May 10, 2025 I was diagnosed with Major Depressive Disorder and Generalized Anxiety Disorder.

3

18. On May 12, 2025, at 8:26 AM, I submitted a formal request for reasonable accommodations under the ADA due to my Major Depressive Disorder and Generalized Anxiety Disorder, which substantially limit my major life activities.

19. In my May 12, 2025 accommodation request, I cited "retroactive changes to deliverable requirements," "publicly critical, personally disparaging interactions," and "contradictory instructions, ambiguous expectations."

20. On May 13, 2025, at approximately 4:00 PM, within thirty-two hours of my accommodation request, Mr. Duran and Ms. Smith called me into a meeting proposing my removal from my position.

21. On May 13, 2025, Mr. Duran stated "I looked you up online," "Is there something from your past? It seems like you don't trust us," and "You are failing in the HR role. I'm going to have to take you out of HR."

22. This May 13, 2025 meeting was the first mention of role change in over 10 weeks of employment, with no prior documentation of performance issues.

23. Defendants failed to engage in any interactive process or attempt accommodations in my current role before proposing involuntary reassignment.

4

24. On May 14, 2025, HR representative Juliana Crowe stated "We have a formal process involving provider paperwork" and "No approved accommodations are in place at this time."

25. On May 15, 2025 In a follow up reassignment meeting, Mr. Duran handed out a document titled "Ideas Lists" dated 5/9/25. After the meeting he emailed a copy of this document, but the file was corrupted, preventing verification of the creation date.

26. On May 27, 2025, Ms. Smith and Ms. Crowe conducted a meeting that focused exclusively on accommodations for a proposed "Process Mining" role rather than my current position.

27. On June 4, 2025, I filed an internal ethics complaint (Case #20250391429) naming Sue Smith, Ramiro Duran, and Juliana Crowe for ADA violations, harassment, and retaliation.

28. On June 6, 2025, I filed EEOC Charge No. 494-2025-03537 alleging disability discrimination and retaliation.

29. On June 10, 2025, I sent mandatory litigation hold notices to HCA's legal counsel.

5

30. On June 11, 2025, during a call with Ms. Smith and HR director Aryn Dendy, when I asked "Can I accept the position under protest?" Aryn Dendy stated "It's not something that is accepted or denied at this point."

31. On June 25, 2025, nineteen days after my EEOC charge filing, Ms. Crowe sent an email stating my federal compliance communications raised "concerns about whether you are dedicating appropriate productive time to your work duties."

32. On June 25, 2025, Ms. Crowe threatened "a pattern of not meeting outlined performance expectations or behavior that is disruptive to business operations may lead to formal corrective steps."

33. Throughout June 2025, I received praise from other management including Robert Nixon and Tommy Smith for exemplary performance and team effort.

34. On July 1, 2025, Ms. Smith and Ms. Crowe called me to a meeting they described as an "open conversation" when I requested an agenda.

35. On July 1, 2025, during this meeting, I received a verbal warning for "behavior" and "communication style" issues, explicitly stated as not related to job performance.

6

36. On July 1, 2025, Ms. Crowe attempted to coerce me to sign a Disciplinary/Corrective Action Form.

37. On July 1, 2025, when I photographed the verbal warning document, Ms. Crowe objected despite the document not being marked confidential.

38. On July 2, 2025, approximately 12:30 PM, Ms. Smith changed our 1:30 PM meeting from virtual to in-person without explanation.

39. On July 2, 2025, approximately 1:00 PM, Ms. Smith was observed editing the Process Mining Onboarding document, adding critical comments about my work.

40. On July 2, 2025, at 1:30 PM, Defendants terminated my employment, twenty-six days after my EEOC charge filing.

41. On July 2, 2025, Brad Wilson, Vice President supervising Mr. Duran, was present during the termination meeting.

42. On July 2, 2025, after I peacefully returned company property, Mr. Wilson followed me 5-10 steps behind as I exited the building.

7

43. The termination occurred 51 days after my ADA accommodation request, 28 days after my internal ethics complaint, and 2 days after the EEOC issued my Notice of Right to Sue.

44. As a direct result of Defendants' actions, I have suffered lost wages, lost benefits, lost promotional opportunities, reputational harm, emotional distress, and exacerbation of my disabilities.

8

# V. RELIEF REQUESTED

Plaintiff requests the Court order:

1. **Back pay** — wages and benefits lost from July 2, 2025 to judgment (approx. $151,725 per year), plus pre-judgment interest.

2. **Front pay** — 5 years future wages in lieu of reinstatement (approx. $1,089,890).

3. **Lost benefits** — 401(k) match, bonuses, stock units, health/COBRA/LTD insurance (approx. $417,242).

4. **Lost promotion differential** — estimated $250,000 for inability to advance to Senior Technical Product Manager.

5. **Job-search expenses** — placement services, career counseling, certifications, relocation (approx. $85,000).

6. **Medical expenses** — past $8,500; future treatment for Major Depressive Disorder and Generalized Anxiety Disorder estimated $500,000.

7. **Compensatory damages** — emotional distress, reputational harm, and retaliation for ethics complaint - $150,000.

8. **Punitive damages** — $150,000 for intentional retaliation 32 hours after ADA request, termination 26 days after EEOC filing, and willful ADA violations.

9. **Evidentiary sanctions (if warranted)** — should the Court determine that Defendants altered or destroyed relevant evidence (e.g., the May 8 template or "Ideas List" metadata), Plaintiff requests: (a) reimbursement of reasonable

1

forensic-analysis costs and (b) any adverse-inference or other sanctions the Court deems appropriate.

10. **Tax gross-up** on wage portions of any award.

11. **Pre- and post-judgment interest** on all economic damages under 28 U.S.C. § 1961.

12. **Injunctive relief** — (a) expunge negative performance records, (b) provide neutral reference (dates, title, salary only), (c) implement ADA-compliant policies and manager training.

13. **Costs of suit** and **attorney's fees** under 42 U.S.C. § 12205.

14. **Other appropriate relief** as the Court deems just and proper.

**Continuing harm:** Lost wages and medical expenses accrue until judgment.

**Total requested: Economic damages approximately $2,417,467; compensatory and punitive damages within statutory cap of $300,000.**

2

See attached EEOC Charge, Notice of Right to Sue, & Statement of Claim.

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A.      It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

JUNE 6, 2025

B.      The Equal Employment Opportunity Commission *(check one)*:

☐      has not issued a Notice of Right to Sue letter.

☑      issued a Notice of Right to Sue letter, which I received on *(date)*    6/30/25         .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.      Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐      60 days or more have elapsed.

☐      less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

See attached Relief Requested

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 9/10/25

Signature of Plaintiff

Printed Name of Plaintiff     JOHN REMBOLD

### B. For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

JOHN REMBOLD

## DEFENDANTS

HCA Management Services, L.P.;
HCA Healthcare, Inc.

**(b)** County of Residence of First Listed Plaintiff    DAVIDSON, TN
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Davidson, TN
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

John Rembold (Pro Se)
8412 Whites Creek Pike
Joelton, TN 37080 / 218-409-9249

Attorneys *(If Known)*

Mark W. Peters, Esq.
Holland & Knight LLP
511 Union Street, Suite 2700, Nashville, TN 37219 / 615-850-8888

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☒ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
2 U.S.C. § 12112; 42 U.S.C. § 12203(a);

Brief description of cause:
ADA discrimination, hostile work environment causing disability, failure to accommodate, retaliation for EEOC Charge #494-2025-03537 and protected activity

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
2,500,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
9/10/25

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Nashville Area Office**
220 Athens Way, Suite 350
Nashville, TN 37228
(629) 236-2240
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 06/30/2025

**To:** Mr. John Rembold
8412 Whites Creek Pike
JOELTON, TN 37080

Charge No: 494-2025-03537

EEOC Representative and email:     GARY WRIGHT
Federal Investigator
gary.wright@eeoc.gov

---

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 494-2025-03537.

On behalf of the Commission,

Digitally Signed By:
Phillip Bornefeld
06/30/2025

Phillip Bornefeld
Area Office Director

**Cc:**
HCA Healthcare
2555 PARK PLZ
NASHVILLE, TN 37203

Please retain this notice for your records.

# CHARGE OF DISCRIMINATION

**EEOC Charge No.:** [To be assigned]
**HOLOWECKI FILING - CHARGE NUMBER TO BE ASSIGNED**
**Inquiry No.:** 494-2025-03537
**Date Filed:** June 6, 2025

## I. CHARGING PARTY INFORMATION

**Name:** John Rembold
**Address:** 8412 Whites Creek Pike, Joelton, TN 37080
**Telephone:** (218) 409-9249
**Email:** johnrembold@gmail.com

## II. RESPONDENT INFORMATION

**Employer:** HCA Healthcare, Inc.
**Address:** One Park Plaza, Nashville, TN 37203
**Type:** Private Employer
**Industry:** Healthcare Services
**Number of Employees:** More than 500 (approximately 275,000 nationwide)
**Phone:** (615) 344-9551

## III. BASES OF DISCRIMINATION

I believe I have been discriminated against based on the following:

☒ DISABILITY (Americans with Disabilities Act)
☒ RETALIATION (Americans with Disabilities Act)
☒ RETALIATION (Opposition/Participation – Title VII & ADA § 12203)

## IV. DATE(S) DISCRIMINATION TOOK PLACE

**Earliest:** March 3, 2025
**Latest:** Continuing through present

☒ **CONTINUING ACTION**

RECEIVED
JUN 6 2025
By _____

# V. STATEMENT OF HARM

## Summary of Allegations

This Charge of Discrimination alleges that HCA Healthcare, Inc. has violated the Americans with Disabilities Act (ADA) by (1) subjecting me to a hostile work environment, (2) failing to engage in the legally required interactive process, (3) refusing to accommodate my documented disability, and (4) retaliating against me for engaging in protected activity. These violations have resulted in a continuing pattern of adverse actions that have materially altered the terms and conditions of my employment.

While I remain employed at the time of this filing, the ongoing failure to accommodate—combined with forced reassignment, exposure to previously reported hostile supervisors, and public undermining of my role—has created objectively intolerable conditions that may imminently give rise to a constructive discharge claim under *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004). These facts, taken together with evidence of systemic ADA noncompliance, support both individual and class-wide relief, and I respectfully request that the EEOC initiate a formal investigation, including potential systemic review and third-party monitoring.

## A. Introduction and Jurisdictional Statement

1. I am an individual with a disability as defined under 42 U.S.C. § 12102. My disability substantially limits major life activities including but not limited to concentrating, thinking, communicating, and working. I am a qualified individual who can perform the essential functions of my position with reasonable accommodations.

2. This Charge is timely filed within 300 days of the discriminatory acts complained of herein. The discrimination is ongoing and continues through the date of this filing.

3. All conditions precedent to the filing of this Charge have been satisfied, and this matter is properly before the Equal Employment Opportunity Commission.

## B. Factual Background

4. On or about March 3, 2025, I began employment with Respondent HCA Healthcare, Inc. ("HCA" or "Respondent") in the position of Technical Product Manager assigned to the Human Resources Group ("HRG") Pod within the Automation Center of Excellence. My starting salary was $151,725.00 per annum.

5. From my first day of employment, I was subjected to a hostile work environment that would ultimately trigger and exacerbate my disability-related symptoms. On March 3, 2025, my first day of employment, I was provided no laptop, no equipment, no training plan, and no onboarding structure—departing significantly from standard corporate onboarding practices. I remained idle at an unassigned desk for several hours until minimal equipment was eventually issued after lunch. This lack of structure and predictability immediately created workplace conditions inconsistent with my disability-related needs.

## C. Hostile Work Environment as Disability Trigger

6. On April 1, 2025, I attended my first meeting with Ramiro Duran, my second-level manager. Rather than providing guidance or support, Mr. Duran subjected me to a hostile interrogation. When he asked what I thought my job was and I provided a reasonable response, he declared "Wrong!" He proceeded to berate me with rhetorical questions and the disorienting directive that I 'need to treat these bots like they're your children,' a statement which introduced confusion and emotional strain rather than clarity or professional guidance. Most troublingly, he threatened "maybe we should reassign you" - a threat of constructive discharge in our very first meeting.

7. The hostile treatment escalated on April 7, 2025, when Mr. Duran told me "I'm not here to do your job. You just gave me a bunch of corporate buzzwords." He repeatedly questioned whether I "even want to be doing this work," attacks that were personal rather than professional in nature.

8. On April 21, 2025, after I submitted a detailed lifecycle and prioritization framework addressing the exact concerns Mr. Duran had raised, he repeatedly characterized my work as "silly" in a demeaning and humiliating manner.

9. Throughout May 2025, my direct supervisor Sue Smith began a campaign of labeling me "defensive" whenever I sought clarification on contradictory directives or asked questions to ensure I understood expectations. This mischaracterization of my efforts to seek clarity as 'defensiveness' was particularly harmful given my disability-related need for structured and unambiguous communication, and created a chilling effect on my ability to engage in the workplace. Such labeling constitutes discriminatory interference under the ADA

10. The cumulative effect of this hostile treatment - the abandonment, the "Wrong!" attacks, the "silly" characterizations, being called "defensive" for seeking clarity, and the constant threats to my job security - directly triggered and severely exacerbated my disability symptoms, including anxiety, sleep disruption, and cognitive processing difficulties.

## D. Request for Reasonable Accommodations

11. As a direct result of the hostile work environment's impact on my disability, on May 12, 2025, at 8:26 AM, I submitted a formal request for reasonable accommodations under the ADA. My request was supported by medical documentation from my treating physician, Dr. Hardwick. The accommodations I requested were modest, imposed no financial burden, and were directly aligned with best practices in disability inclusion and ADA compliance. These included:

    a. Written documentation of expectations and success criteria
    b. Structured communication protocols
    c. Advance notice of meetings when feasible
    d. Feedback delivered privately with objective criteria

12. These accommodations were specifically designed to mitigate the impact of the hostile and chaotic work environment on my disability-related limitations.

## E. Immediate Retaliation

13. The Respondent's reaction was swift and retaliatory. Within thirty-two (32) hours of my accommodation request - on May 13, 2025, at 4:00 PM - Mr. Duran and Ms. Smith called me into a meeting where they

proposed removing me from my position. Mr. Duran stated "I think I have to take you out of HR," and subjected me to invasive questioning about whether "something from your past" was "bothering" me. I was repeatedly called "defensive" and my competence was questioned. No performance improvement plan had been offered, no progressive discipline followed, and no documented performance deficiencies existed prior to my accommodation request.

14. The temporal proximity between my protected activity and the adverse employment action—less than 32 hours—is extraordinarily short and supports a strong inference of retaliatory intent under *Clark County School District v. Breeden*, 532 U.S. 268 (2001). Courts have consistently held that a short interval between protected conduct and adverse treatment may serve as compelling circumstantial evidence of retaliation.

## F. Failure to Engage in Interactive Process and Illegal Corporate Policy

15. On May 14, 2025, HR Business Partner Juliana Crowe revealed Respondent's systematic ADA violations by stating it was HCA's policy to wait for medical provider documentation before offering accommodations, claiming "We have not yet received the completed healthcare provider form, so there are not approved accommodations in place at this time."
    a. If this statement accurately reflects HCA's operational policy, it constitutes a per se violation of 29 C.F.R. § 1630.2(o)(3), which clearly mandates that the interactive process must commence promptly upon an employee's request for accommodation—not delayed until receipt of medical certification. Courts have uniformly held that undue delay or refusal to initiate this process undermines the core purpose of the ADA, as affirmed in *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105 (9th Cir. 2000), rev'd on other grounds, 535 U.S. 391 (2002).

16. More egregiously, on May 27, 2025, Ms. Crowe stated that it was HCA's policy to only evaluate accommodations specifically listed by the healthcare provider, refusing to consider accommodations I had identified. This policy directly violates established law under Taylor v. Phoenixville School District, 184 F.3d 296 (3d Cir. 1999) and EEOC Enforcement Guidance, which require employers to consider input from both the employee and medical providers. Ms. Crowe's statements establish that HCA maintains company-wide policies that systematically violate federal law, creating grounds for class-wide relief.

17. These illegal policies prevented any good faith interactive process. There was no discussion of whether my requested accommodations would pose an undue hardship (they would not, as they were cost-free). There was no analysis of essential functions. Instead, Respondent jumped immediately to involuntary reassignment - using it as a first resort rather than a last resort as required by law. This was not an isolated failure but the predictable result of HCA's unlawful corporate policies.

## G. Evidence of Pretext and Consciousness of Guilt

18. On May 15, 2025, Respondent presented a document titled "Idea Lists" which it claimed was created on May 9, 2025 - before my accommodation request. Notably, this document contains language that mirrors my specific accommodation requests.
    a. This document is now corrupted and cannot be opened, obstructing verification of its metadata and actual creation date. Given its timing and relevance to my accommodation request, this unexplained data loss raises material concerns under the spoliation doctrine as outlined in *Silvestri v. General Motors Corp.*, 271 F.3d 583 (4th Cir. 2001), where pre-litigation destruction of evidence supported sanctions. A forensic analysis is necessary to preserve chain of custody and assess potential tampering.

19. Pursuant to *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004), Respondent had a duty to preserve relevant electronic records once litigation became reasonably foreseeable. I request that the EEOC direct immediate forensic preservation and chain-of-custody verification of this file and related communications.

## H. Ongoing Retaliation Creating Conditions Approaching Constructive Discharge

20. On May 28, 2025, I was excluded without explanation from the June 5-6 Parallon/ACoE offsite meetings - critical strategic planning sessions directly relevant to my role. This exclusion further isolated me and damaged my career prospects.

21. On May 30, 2025, Without prior notice or opportunity for discussion, Respondent announced in a team meeting that another employee would assume my HRG Pod responsibilities and that I would be reassigned to Process Mining. This public announcement, made without consultation or explanation, bypassed all standard performance management protocols and deprived me of basic professional dignity.

22. On June 2, 2025, I sent formal written requests for documentation of the new role, including job description, success metrics, and reporting structure. I also requested confirmation that my ADA accommodation request remained under consideration. Respondent refused to provide any written documentation.

23. On June 4, 2025, I was forced under economic duress to begin working in a role I had explicitly requested be paused pending ADA compliance. Despite my June 2, 2025 written request for role documentation and a pause on reassignment, Respondent proceeded without providing the requested information. Critically, the reassigned role preserved my reporting line to Ms. Smith and expanded Mr. Duran's authority over my work—intensifying my exposure to the same individuals whose conduct directly triggered my ADA accommodation request. This reassignment, imposed without consent and under unresolved accommodation issues, materially worsened my conditions and contributed to an environment that no reasonable person with a disability could endure.

24. Respondent's shifting and contradictory explanations for this reassignment constitute powerful evidence of pretext. On June 2, 2025, HR Business Partner Juliana Crowe stated in writing that "management's decision to shift your project focus was made based on performance concerns as you onboarded." However, Respondent simultaneously claims the reassignment was for "business reasons." These mutually exclusive explanations - performance-based versus business-based - demonstrate that neither is the true reason. Under Reeves v. Sanderson Plumbing Products, such shifting explanations permit the inference that the real reason was discriminatory retaliation for my ADA accommodation request.

25. While Respondent created an "Automation Mining Plan" document purporting to outline the new role, this document was provided only after I was forced to begin the undefined position, and only after I had repeatedly requested such documentation. The post-hoc creation of role documentation does not cure the discriminatory intent evidenced by the immediate reassignment discussion following my accommodation request, the contradictory explanations, and the deliberate indifference to placing me under managers whose hostile treatment triggered my disability symptoms.

## I. Protected Activity - Ethics Complaint

26. On June 4, 2025, I filed an internal ethics complaint specifically citing ADA violations, retaliation, hostile work environment, and constructive discharge. I named Mr. Duran, Ms. Smith, and Ms. Crowe as violators of HCA policy and federal law.

27. This ethics complaint constitutes protected activity under both the ADA and Title VII's opposition clause. In *Crawford v. Metropolitan Government of Nashville and Davidson County*, 555 U.S. 271 (2009), the Supreme Court held that internal complaints—when made in opposition to perceived unlawful practices—are sufficient to trigger retaliation protections, even absent a formal report. Accordingly, any adverse treatment following my June 4 complaint is presumptively retaliatory under federal law.

## J. Legal Violations

28. **Direct Evidence of Discrimination:** Under the framework established in *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292 (6th Cir. 2020), Respondent's categorical refusal to provide any of the requested accommodations—despite timely notice and supporting medical documentation—constitutes direct evidence of discriminatory animus. Under *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292 (6th Cir. 2020), such an outright denial of accommodations, particularly when no hardship is asserted or evaluated, satisfies the standard for direct evidence, bypassing the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

29. **Failure to Accommodate:** Respondent violated 42 U.S.C. § 12112(b)(5)(A) by failing to provide reasonable accommodations that would have enabled me to perform the essential functions of my position. Respondent never attempted a single accommodation in my original role before forcing reassignment.

30. **Hostile Work Environment:** Respondent subjected me to severe and pervasive harassment based on my disability, including demeaning comments, impossible standards, and deliberate creation of chaos that exacerbated my disability symptoms. The harassment was unwelcome, based on disability, and altered the terms and conditions of my employment.

31. **Retaliation:** Respondent violated 42 U.S.C. § 12203(a) by taking materially adverse actions against me within hours of my protected activity. The reassignment discussions, exclusion from meetings, forced role change, and continued hostile treatment constitute retaliation under *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006).

32. **Constructive Discharge:** Respondent has created intolerable working conditions that could compel a reasonable person with a disability to resign. Under *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004), constructive discharge occurs when the working environment becomes so objectively hostile or abusive that resignation is effectively involuntary. Here, the failure to accommodate, the forced reassignment without consent, and continued exposure to hostile managers meet this threshold.

33. **Arbitration Agreement Invalidity:** Any arbitration agreement is void as against public policy given the systemic nature of ADA violations affecting patient care across 186 hospitals. The EEOC's independent authority to pursue public interest litigation is not constrained by private arbitration agreements. See *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002). Furthermore, the agreement is unconscionable given the disparate bargaining power and Respondent's documented practice of using arbitration to conceal systematic discrimination from public scrutiny.

## K. Pattern or Practice Evidence

34. Respondent's treatment of me is not an isolated incident. Following HCA's acquisition of Mission Health in 2019, systematic violations have been documented:

**Mission Health Post-HCA Acquisition (2019-2022):**

- 223+ physicians departed citing hostile treatment and intolerable working conditions
- Complete elimination of entire departments including oncology, urology, and neurology
- Centers for Medicare & Medicaid Services (CMS) issued immediate jeopardy findings for patient safety violations
- North Carolina Attorney General filed enforcement action for breach of acquisition commitments
- Demonstrates systematic creation of hostile environments leading to mass departures

35. This pattern of conduct supports a plausible inference that Respondent has institutionalized the use of constructive discharge as a de facto business strategy to remove employees who assert federally protected rights or request accommodations. Such systemic practices may satisfy the threshold for a pattern-or-practice violation under *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977), particularly when supported by statistical or anecdotal evidence of repeated discriminatory outcomes.

36. The public interest demands immediate investigation given HCA's role in American healthcare. With 186 hospitals serving millions of patients, systematic discrimination against disabled employees directly impacts care quality and patient safety, as evidenced by CMS's immediate jeopardy findings at Mission Health. The connection between employee welfare and patient outcomes in healthcare settings elevates this matter beyond individual employment discrimination to a public health concern. When healthcare workers face discrimination and retaliation for requesting basic accommodations, patient care inevitably suffers.

## L. Class Implications

37. Upon information and belief, HCA maintains a company-wide pattern or practice of:

- Forcing reassignments instead of accommodating employees in current roles
- Using "performance concerns" as pretext immediately following ADA requests
- Creating hostile environments to force employee departures
- Failing to train managers on basic ADA obligations and interactive process requirements
- Retaliating against employees who request accommodations through immediate adverse actions
- Maintaining a culture where managers like Mr. Duran and Ms. Smith operate with impunity

38. The circumstances described herein, combined with HCA's company-wide policies and repeated failure to engage in the interactive process, strongly suggest that similarly situated employees may have been subjected to analogous treatment. Conservative estimates suggest 500+ similarly situated employees based on HCA's 275,000 workforce and industry-standard disability rates. The company's standardized HR policies and documented 'wait for medical forms' practice create textbook commonality under Fed. R. Civ. P. 23. I respectfully request that the EEOC initiate a pattern-or-practice investigation under 29 C.F.R. § 1601.11, and consider issuing a Commissioner's Charge if appropriate. The scale and consistency of these practices raise questions about systemic noncompliance warranting class-wide scrutiny.

## M: Continuing Violation

39. The discrimination and retaliation I experience constitute a continuing violation under the doctrine recognized in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Each day I am required to work without accommodations, under hostile supervision, and in an undefined role not of my choosing, represents a discrete and cumulative violation of the ADA. These ongoing harms toll the limitations period and further support injunctive relief.

# VI. MANDATORY PRESERVATION AND PRODUCTION

I respectfully request that the EEOC immediately order:

## 1. Litigation Hold

Pursuant to Fed. R. Civ. P. 37(e), I request immediate preservation of all electronically stored information (ESI) relevant to this matter, including but not limited to:

- All communications mentioning John Rembold from January 1, 2025 to present
- All versions of "Idea Lists" and "Automation Mining Plan" documents
- Complete metadata and audit logs
- SharePoint version histories
- Email server logs
- Webex recordings and chat logs
- All Infor GHR and any HRIS system logs showing accommodation request processing
- Performance calibration documents comparing Charging Party to peers

## 2. Forensic Analysis Required

- "Idea Lists" document - original creation date and all modifications
- Evidence of document tampering or post-dating
- Server logs showing actual creation/modification times
- Chain of custody for all documents

## 3. Comparative Evidence

- All employees reassigned within 180 days of accommodation requests (2020-present)
- All employees labeled "defensive" by Sue Smith
- Ramiro Duran's employee complaints/grievances (5 years)
- Juliana Crowe's accommodation approval/denial rates
- Training records for all named managers on ADA compliance

## 4. Pattern Evidence

- Exit interview data citing hostile management
- HR complaints against named managers
- Other ethics complaints involving disability discrimination
- Accommodation request outcomes company-wide
- HCA's written HR policies and procedures regarding ADA accommodation requests, including:
    - Official policy on when the interactive process begins
    - Policy on whether employee-suggested accommodations must be considered
    - Training materials provided to HR on these policies

- Any internal guidance or memos interpreting these policies
- All versions of these policies from 2020 to present, showing any changes
- Communications from corporate HR to facility HR regarding accommodation procedures
- Any audits or reviews of ADA accommodation compliance

# VII. RELIEF REQUESTED

## A. Immediate Injunctive Relief

- Temporary restraining order preventing any adverse employment action
- Order compelling the Respondent to immediately engage in a legally compliant interactive process under 29 C.F.R. § 1630.2(o)(3), including direct dialogue with the Charging Party.
- Temporary reassignment away from previously identified hostile managers during the pendency of investigation, consistent with interim relief standards outlined in *EEOC v. Pan American World Airways, Inc.*, 897 F.2d 1499 (9th Cir. 1990).
- Preservation of all evidence and metadata

## B. Monetary Relief

1. Full compensatory damages for severe emotional distress, psychological harm, and disruption to daily functioning directly resulting from Respondent's unlawful conduct, as recognized in EEOC v. AutoZone, Inc., 707 F.3d 824 (7th Cir. 2013)
2. Punitive damages for willful, malicious, and reckless conduct given Respondent's $1.77 billion penalty history and pattern of systematic violations
3. All medical expenses including therapy, medication, and treatment caused by discrimination
4. Future lost earnings if constructive discharge becomes necessary due to continuing intolerable conditions
5. The Charging Party seeks all available monetary remedies under federal and state law, including but not limited to:

    - Back pay and lost benefits from date of discrimination through resolution
    - Front pay or reinstatement to suitable position with full accommodations
    - Liquidated damages equal to back pay amount for willful ADA violations
    - Lost earnings capacity for diminished future career potential
    - Compensatory damages for severe emotional distress, psychological harm, and disruption to daily functioning directly resulting from Respondent's unlawful conduct
    - Punitive damages for willful, malicious, and reckless conduct
    - Lost promotional opportunities and career advancement damages
    - Training and certification costs for career rehabilitation
    - Medical expenses including therapy, medication, and treatment caused by discrimination
    - Lost 401(k) matching contributions and employer retirement contributions
    - Lost stock options, bonuses, and incentive compensation
    - Health insurance continuation costs (COBRA premiums)
    - Job search expenses and career counseling costs
    - Costs of relocating if necessary to find comparable employment
    - Reputational damages arising from Respondent's dissemination of false performance-related narratives, which have foreseeably impaired future employment prospects. See *Cicero v. Borg-Warner Automotive, Inc.*, 280 F.3d 579 (6th Cir. 2002).
    - Garden leave compensation (paid leave during pendency of proceedings)

- Enhanced compensatory damages for willful violation of ethics complaint protections
- Prejudgment interest on all economic damages from date of violation
- Post-judgment interest on all monetary awards until paid in full
- Attorney's fees and costs under 42 U.S.C. § 12205
- Tax gross-up for any taxable portions of settlement or judgment
- Any other monetary relief deemed just and equitable

## C. Equitable Relief

- Reassignment to a comparable AI/automation role under an alternative management chain, with job duties, compensation, and advancement opportunities equivalent to the original position.
- Implementation of the originally requested accommodations, including structured communication protocols and written expectations, in accordance with 29 C.F.R. § 1630.2(o).
- Formal expungement of all adverse performance narratives or evaluations arising after the May 12, 2025 accommodation request.
- Provision of a neutral reference letter affirming dates of employment, title, and job scope, with no mention of disputed performance issues.

## D. Systemic Relief

- Company-wide ADA compliance training with focus on:
    - Interactive process obligations
    - Hostile work environment prevention
    - Retaliation prevention
    - Management communication standards
- Appointment of a third-party monitor to oversee HCA's ADA compliance efforts for a minimum of three (3) years, with quarterly reporting to the EEOC on accommodation requests, interactive process initiation timelines, and manager compliance rates. The monitor should have access to training records, internal grievance logs, and policy revision drafts to ensure meaningful institutional reform.
- Mandatory policy revision requiring that accommodation options be fully evaluated and documented prior to any reassignment discussion, including analysis of essential job functions and assessment of undue hardship. Revised policies should explicitly prohibit reassignment as a first-line response to ADA requests, and require HR to maintain written justification for any proposed reassignment following a protected disclosure.
- Public reporting of ADA compliance metrics
- Personal liability training for managers who violate ADA

# VIII. VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct. I understand that 18 U.S.C. § 1001 provides for criminal penalties for knowingly and willfully making false statements to the federal government.

This charge is filed pursuant to Federal Express Corp. v. Holowecki, 552 U.S. 389 (2008), and constitutes a request for the EEOC to act on my behalf to remedy the unlawful employment practices described herein.

I consent to the disclosure of my identity to Respondent for purposes of investigation and conciliation.

DATED: _____June 6_____, 2025

_____

JOHN REMBOLD
Charging Party


STATE OF TENNESSEE    )
) ss.
COUNTY OF Davidson )

SUBSCRIBED AND SWORN to before me this _6_ day of _June_, 2025.

_____
Notary Public
My Commission Expires: _1/22/2029_